In the Matter of the Application of the CITY OF NEW
YORK, Appellant, Relative to Acquiring Title to Lands
Required for the Opening of Newport Avenue, Adiron-
dack Boulevard and Neponsit Avenue.

NEPONSIT REALTY COMPANY et al., Respondents.

Eminent domain — land already devoted to a public use cannot
be taken in a condemnation proceeding — when a street railway
has acquired an easement or right of way along streets laid out
on maps but not on the ground, such rights of way cannot be con-
demned in a proceeding by a city to open such streets.

1. A general grant of power to condemn land does not extend to
land which had been devoted to a public use, and where it appears
in a proceeding instituted by the city of New York for the opening
of streets in a newly-developed residential district that the property
owners have tendered to the city conveyances of the lands in the
proposed streets subject to and reserving all rights in and to said
streets of a designated street surface railway the city cannot con-
demn the rights of way claimed by the railway company unless the
franchise previously obtained by the company is invalid.

2. In this proceeding for opening a street it appears that a street
railway company obtained from the owners an easement or right of
way along private streets laid out upon maps, but not then laid out
on the ground.   Before this proceeding was begun the railway com-
plied with all the provisions of sections 170 and 171 of the Railroad
Law (Cons. Laws, ch. 49; L. 1910, ch. 481; amd. L. 1911, ch. 418,
formerly §§ 90 and 91, L. 1895, ch. 933) for the extension of its route
along the streets in question, but had not then obtained the per-
mission and approval of the Public Service Commission.   (Pub.
Serv. Com. L., Cons. Laws, ch. 48, § 53; L. 1910, ch. 480.)   Since that
time a certificate of approval by the commission has been obtained,
of which fact the court has been advised on this appeal.   *Held*, that
such certificate having been granted, the railroad company has a
perfected franchise antedating this proceeding, and hence its rights
and easements are not subject to condemnation.

*Matter of City of New York (Newport Ave.)*, 171 App. Div. 928,
affirmed.

(Argued April 17, 1916; decided May 12, 1916.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered

November 1, 1915, modifying and affirming an order of Special Term dismissing a petition for the appointment of commissioners in street opening proceedings.

The facts, so far as material, are stated in the opinion.

*Lamar Hardy,* Corporation Counsel (*Joel J. Squier* and *John J. Kearney* of counsel), for appellant. The rights granted by the landowners to the railway company for the construction and operation of the railroad in the premises sought to be condemned could not prevent the city from acquiring the fee of the land in trust for street purposes, unincumbered with the right of the railway company to operate a railroad over the land in perpetuity. (*Matter of R. H. & L. R. R. Co.,* 110 N. Y. 119; *People ex rel. Steward* v. *R. R. Comrs.,* 160 N. Y. 202; *C. C. Traction Co.* v. *K. C. R. R. Co.,* 153 N. Y. 540; *People ex rel. Babylon R. R. Co.* v. *R. R. Comrs.,* 32 App. Div. 179; *People ex rel. Linton* v. *B. H. R. R. Co.,* 172 N. Y. 90; *City of Buffalo* v. *Pratt,* 131 N. Y. 293; *Rasch* v. *Nassau El. R. R. Co.,* 198 N. Y. 385.)

*Lynn C. Norris* for Neponsit Realty Company et al., respondents. The said resolution of the board of estimate was unlawful for the reason that it purposes to condemn property already devoted to public use. (*Kansas* v. *Hyde,* 196 Mo. 498; *Seattle, etc., Co.* v. *State,* 7 Wash. 150; *People ex rel. Rhodes* v. *Mole,* 85 App. Div. 33; *Matter of Mayor, etc.* [*E. 161st St.*], 52 Misc. Rep. 596; 135 App. Div. 912; 198 N. Y. 606; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo,* 200 N. Y. 133.)

*Louis J. Carruthers* and *Joseph F. Keany* for Ocean Electric Railway Company, respondent. The Ocean Electric Railway Company has easements in the land sought to be acquired for street purposes, which easements are impressed with a public use. (*Matter of Staten Island Rapid Transit Co.,* 103 N. Y. 252; *People ex rel. S. S. Traction Co.* v. *Wilcox,* 133 App. Div. 556; 196 N. Y.

212; *Matter of Mayor, etc.*, 198 N. Y. 606:) The city of New York cannot condemn for street purposes lands or easements owned by a railway company and set apart for and impressed with public use. (*Matter of Mayor, etc. [E. 161st St.]*, 52 Misc. Rep. 596; 135 App. Div. 912; 198 N. Y. 606; *Matter of City of New York*, 217 N. Y. 45.)

*H. Gordon Pierce* for West Rockaway Land Company, respondent. The Ocean Electric Railway Company has a perpetual easement for street railway purposes in the land to be acquired, and to that extent the land is already devoted to a public use. (L.' 1890, ch. 565, §§ 5, 17.)

*Allen Evarts Foster* and *Franklin B. Lord* for Queens County Water Company, respondent.

*Alexander Cameron* and *Charles T. Russell* for New York and New Jersey Telephone Company, respondent.

*Alfred T. Davison* for Queens Borough Gas and Electric Company, respondent.

CARDOZO, J. This is a proceeding in behalf of the city of New York for the opening of Newport avenue, Adirondack Boulevard and Neponsit avenue, in the borough of Queens. The property owners have tendered to the city conveyances of the land in the streets "subject to and excepting and reserving all rights in and to said streets of Ocean Electric Railway Co." If the rights of the Ocean Electric Railway Company are not subject to condemnation, the form of deed is sufficient, and the proceeding must fail (Greater N. Y. Charter, § 992, now amended by L. 1915, ch. 606). If the rights of the Ocean Electric Railway Company are subject to condemnation, they have been improperly excepted, and the proceeding may be maintained.

The rule is settled that a general grant of power to condemn land does not extend to land which has been devoted to a public use (*Matter of Mayor, etc., of N. Y.*

[*East 161st Street*], 52 Misc. Rep. 596; 135 App. Div. 912; 198 N. Y. 606; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113; *Suburban Rapid Transit Co.* v. *Mayor, etc., of N. Y.*, 128 N. Y. 510). To reach such land, the grant of power must be specific. The question, therefore, is whether the Ocean Electric Railway Company has a valid franchise to maintain a railway in these streets. There is a space of about eight blocks in Newport avenue where its franchise is conceded. That is part of its main route. The city denies that there has been a valid extension of the route along the residue of the land in controversy. Unless the extension is valid, the rights of way may be condemned. It is only through the fulfillment of a public function that any property becomes immune (*Matter of Rochester, H. & L. R. R. Co.*, 110 N. Y. 119).

The land through which these streets are to be opened is one of the undeveloped sections of the city of New York. It is owned for the most part by two land companies. The companies filed maps by which the tract was subdivided into lots and streets. For such a section transit facilities are the great need. To acquire these facilities, the owners co-operated with the railway. They conveyed to the railway without compensation an easement or right of way along the streets laid out upon their maps. The streets had not yet been laid out upon the ground. The railway accepted the grant. It filed in the proper public office a map and profile of the extension of its route; it filed the requisite consents of property owners; it complied with all the other requirements of sections 170 and 171 of the Railroad Law (L. 1910, ch. 481; L. 1911, ch. 418; formerly §§ 90 and 91, L. 1895, ch. 933). One condition, however, remained to be fulfilled. Section 53 of the Public Service Commissions Law (L. 1910, ch. 480) provides that the permission and approval of the commission must be obtained before the construction of a street railroad, or any extension thereof, may be begun. In February, 1911,

the railway company applied to the public service commission for a certificate of approval.   The city of New York opposed the application, and in May, 1911, the certificate was refused.   A petition for a rehearing followed; and in October, 1911, a rehearing was granted.   While that application before the commission was still undetermined, the city, in March, 1912, filed a map in which the land companies' private streets were laid out as public highways.   In the same month the board of estimate and apportionment adopted a resolution that the streets be opened.   Title was to vest in the city when commissioners of estimate had been appointed and had filed their oaths (Greater N. Y. Charter, § 990).   In April, 1912, this proceeding for the appointment of commissioners was begun; and at once the owners of the land to be condemned tendered their deeds of cession, excepting, however, the railroad's right of way.   The trial judge held that the railroad's easements were devoted to a public use, and were not subject to condemnation.   At that time the proceeding before the public service commission had not been finally determined.   On the argument of this appeal the statement was made, and not disputed, that since the decision at Special Term a certificate of approval had been granted.   The tracks have been laid, the cars are running, and the franchise has been perfected.

In this situation the railway's easements must be adjudged to be exempt from condemnation.   There have been two proceedings, each aimed at the acquisition of a public right.   One is the proceeding in behalf of the railway company to extend its right of way.   The other is the proceeding in behalf of the city to open the streets.   The company's proceeding was begun before the city's.   At a time when the streets were not even indicated on the city's map, the railroad had done most of the things essential to the extension of its route.   The easements had been acquired, the maps and profiles and consents of property owners had been filed, and the approval of the public

service commission had been invoked. Until that proceeding was finally determined, and determined adversely to the railroad, its rights were prior and paramount in the route which it had thus located. That is the rule which has always been applied in controversies between rival railroads (*Homestead St. Ry.* v. *Pittsburgh & H. E. S. Ry.*, 166 Pa. St. 162; *Rochester, H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 110 N. Y. 128; 44 Hun, 206, 213; *People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 246; 2 Lewis on Eminent Domain [3d ed.], p. 910). We think it must also be the rule in controversies between a railroad and a city. Different considerations may govern where the proceeding first begun is prosecuted in bad faith or without reasonable diligence. There is no suggestion here either of bad faith or of laches. The railroad company was going forward in due and orderly course when the city attempted to intercept its pending proceeding and destroy its right of way. If the public service commission had made a final determination adverse to the railroad, a different situation would be before us (*Homestead St. Ry.* v. *Pittsburgh & H. E. S. Ry., supra,* at p. 175; *Larimer & L. St. R. Co.* v. *Larimer St. Ry. Co.*, 137 Pa. St. 533). We are now advised, however, that the final determination has been favorable to the railroad. Record evidence, though not in the return, may be considered to sustain the judgment (*People* v. *Flack,* 216 N. Y. 123, 129; *Matter of Cooper,* 93 N. Y. 507, 511). If we were to order a rehearing, the city would gain nothing. The railroad company would be able to make proof of a perfected franchise. Such a franchise, the outgrowth of a petition antedating by many months the petition of the city, confers upon the railroad priority of right.

The order should be affirmed with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, HOGAN and POUND, JJ., concur.

Order affirmed.