■ In the Matter of the Acquisition of Easements by CENTRAL NEW YORK OIL AND GAS COMPANY, LLC. CENTRAL NEW YORK OIL AND GAS COMPANY, LLC., Respondent; LAWRENCE V. LaDUE et al., Appellants. (Proceeding No. 1.) In the Matter of the Acquisition of Easements by CENTRAL NEW YORK OIL AND GAS COMPANY, LLC. CENTRAL NEW YORK OIL AND GAS COMPANY, LLC., Respondent; LAWRENCE V. LaDUE et al., Appellants. (Proceeding No. 2.) In the Matter of the Acquisition of Easements by CENTRAL NEW YORK OIL AND GAS COMPANY, LLC. CENTRAL NEW YORK OIL AND GAS COMPANY, LLC., Respondent; JOHN SEYMOUR et al., Appellants. (Proceeding No. 3.) In the Matter of the Acquisition of Easements by CENTRAL NEW YORK OIL AND GAS COMPANY, LLC. CENTRAL NEW YORK OIL AND GAS COMPANY, LLC, Respondent; JOHN SEYMOUR et al., Appellants. (Proceeding No. 4.) In the Matter of the Acquisition of Easements by CENTRAL NEW YORK OIL AND GAS COMPANY, LLC. CENTRAL NEW YORK OIL AND GAS COMPANY, LLC, Respondent; CYNTHIA L. SMITH CARD et al., Appellants. (Proceeding No. 5.)
[969 NYS2d 174]—

Garry, J. Appeal from that part of an order of the Supreme

Court (Sherman, J.), entered June 19, 2012 in Tioga County, which, in five proceedings pursuant to EDPL articles 4 and 5, among other things, granted petitioner's motion to preclude respondents' expert from testifying at trial.

Petitioner is the owner and operator of the Stagecoach Natural Gas Underground Storage Facility in Tioga County.[1] After obtaining a certificate of public convenience and necessity from the Federal Energy Regulatory Commission, petitioner commenced these condemnation proceedings pursuant to EDPL article 4 to acquire perpetual easements for underground gas storage in land owned by respondents.[2] Supreme Court (Tait, J.) issued an order and judgment granting petitioner a perpetual easement in the Oriskany Sandstone formation underlying respondents' land for this purpose. Respondents thereafter filed a claim for compensation pursuant to EDPL article 5, in which they alleged that they should be compensated for the value of native gas, if any, remaining in the storage area and for lost rights to develop and extract gas in other rock formations.

The parties timely filed appraisal reports (see 22 NYCRR 202.61 [a] [1]). Petitioner's certified real estate appraiser, John Miller, reported that he had performed a comparable sales analysis and had concluded that gas storage agreements have no material effect on market value. He calculated a market rent for the taking of $32.88 per year and a market value of $330. Miller's report further stated that these figures did not include any "value attributable to any native gas remaining in the depleted gas field . . . [as such gas was] considered to not be economically feasible to produce."

Respondents' report was drafted by Donald Zaengle, a geologist, and did not address the market value of the storage space rights. Instead, Zaengle opined that petitioner's easement would preclude respondents from exercising their rights to develop gas in the Marcellus shale formation. Zaengle explained that the Marcellus formation lies above petitioner's storage space and is a necessary part of the space's integrity because its low porosity and permeability will serve to prevent stored gas from escaping. However, according to Zaengle, the process of high pressure hydraulic fracturing (hereinafter hydrofracking) that is necessary

---

**1.** The gas is stored by injecting it into underground rock formations that have been depleted of native gas by previous drilling operations.

**2.** The parties stipulated that this appeal would be prosecuted on the single record of the first of these proceedings as all of the condemnation proceedings have been consolidated for trial, involve the same issues and have similar records. Accordingly, only the first proceeding is specifically discussed herein.

to extract gas from the Marcellus formation would jeopardize the storage space by creating artificial fractures in the rock through which gas could escape. In Zaengle's opinion, the easement prevents respondents from interfering with the storage space in this fashion, thus precluding them from future development of gas in the Marcellus layer. Zaengle calculated the value of this lost gas at $63,000 per acre, plus $5,750 per acre for lost lease payments. He further opined that respondents would be precluded from developing the Utica shale formation below the storage space, and assigned a value of $20,700 per acre to this loss. Finally, he opined that respondents should be compensated for commercially recoverable native gas, if any, that remains in the storage space. In rebuttal, petitioner filed a further report by Miller, relying upon and incorporating a detailed report by Dan Billman, a geologist. Billman's report rejects all of Zaengle's geological conclusions, and he opines that petitioner's easement does not preclude respondents from exercising gas development rights in any formation other than the Oriskany.

Petitioner thereafter moved to strike respondents' appraisal report and to bar Zaengle from testifying at the impending compensation trial, contending that he was not a certified real estate appraiser and that his report did not comply with regulatory requirements. Respondents cross-moved to strike petitioner's appraisal report on the ground that it did not address the value of their lost gas development rights. Rather than directly opposing petitioner's motion to strike their appraisal report, respondents advised Supreme Court that they wished to withdraw the report and, instead, to employ Zaengle as an expert witness in support of their cross motion. They then submitted an affidavit and additional report from Zaengle addressing the geological issues underlying their claim. Supreme Court (Sherman, J.) found, among other things, that Zaengle's credentials as a geologist did not qualify him to render opinions as to the validity of petitioner's appraisal. The court further rejected respondents' contention that the easement deprived them of gas development rights, finding that its language expressly reserved to them such rights in formations other than the Oriskany Sandstone. The court thus barred Zaengle from testifying at trial, granted petitioner's motion and denied respondents' cross motion. Respondents appeal, and we affirm.

Respondents argue that Zaengle is qualified to offer relevant opinions as a geologist, and that such testimony is necessary to determine the extent to which the grant to petitioner limits respondents' gas development rights. We recognize that "expert witnesses who are not real estate appraisers are not categori-

cally excluded from offering their opinion on property valuations" (*Matter of OCG L.P. v Board of Assessment Review of the Town of Owego*, 79 AD3d 1224, 1226 [2010]; *see Matter of City of Troy v Town of Pittstown*, 306 AD2d 718, 719 [2003], *lv denied* 1 NY3d 505 [2003]; *Matter of Tennessee Gas Pipeline Co. v Town of Sharon Bd. of Assessors*, 298 AD2d 758, 759 [2002], *lv denied* 99 NY2d 506 [2003]). Nonetheless, we agree with Supreme Court that petitioner's easement does not limit respondents' rights to lease, convey or otherwise develop gas in any formation other than the Oriskany and, thus, Zaengle's testimony is irrelevant.

The extent to which a condemnation limits a claimant's property rights is determined by the language used in the appropriation and the underlying purpose of the taking, and "[t]he quantum of the title to be taken will not be extended by implication" (*Jafco Realty Corp. v State of New York*, 18 AD2d 74, 76 [1963], *affd* 14 NY2d 556 [1964] [internal quotation marks and citation omitted]; *see County of Onondaga v Sargent*, 92 AD2d 743, 743-744 [1983], *appeal dismissed* 59 NY2d 967 [1983]). Here, petitioner's easement explicitly reserves to respondents "the right to grant oil, gas and other mineral rights to others in formations other than the Oriskany Sand" and limits that reservation of rights only by precluding respondents from "grant[ing] or convey[ing] gas *storage* rights" (emphasis added) that interfere with petitioner's easement. Neither Zaengle nor respondents make any claim regarding their rights to *store* gas; rather, they argue that the easement limits their rights to *extract* gas from other formations—an interpretation that is directly contradicted by the plain language of the grant. Further, petitioner has precluded any potential future effort to interpret the grant more broadly by expressly disavowing any such interpretation as a matter of record in these proceedings (*see Matter of City of New York*, 174 NY 26, 35-36 [1903]).

The amount of damages to which a landowner is entitled as the result of a condemnation is determined as of the time of the taking (*see Wolfe v State of New York*, 22 NY2d 292, 295 [1968]; *Matter of County of Schenectady [Pahl]*, 194 AD2d 1004, 1006 [1993], *lv denied* 83 NY2d 756 [1994], 84 NY2d 806 [1994]). As Supreme Court observed, no commercial development of the Marcellus shale is currently taking place in New York as the result of a moratorium against hydrofracking, making any present analysis of the potential future effects of such activity and of the value of any related development rights both premature and speculative. If, as Zaengle claims, hydrofracking in the Marcellus formation does eventually prove to pose an unaccept-

able risk to petitioner's storage space—a claim that petitioner does not now make—it may choose at that time to undertake appropriate measures to acquire whatever additional rights may prove to be necessary, and, of course, to compensate the affected landowners appropriately. As petitioner has not yet made any such acquisition, the court properly precluded respondents from presenting evidence on their claims relative to development rights in the Marcellus formation.

Finally, respondents expressly limited their notice of appeal to that part of Supreme Court's order that barred Zaengle from testifying as to the geological effect of development of the Marcellus shale on petitioner's gas storage space and prevented respondents from presenting evidence on this issue. Thus, their remaining arguments regarding other aspects of the court's order are not properly before this Court (*see Keeler v Perrino*, 85 AD3d 1424, 1425 [2011]; *Gozzo v First Am. Tit. Ins. Co.*, 75 AD3d 953, 955 [2010]; *Yost v Quartararo*, 64 AD3d 1073, 1074 n [2009]).

Lahtinen, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.